IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Civil Action No. 3:15-cv-00119 |
| and | ) | |
| STATE OF NEVADA, | ) | **CONSENT DECREE** |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| NEWMONT USA LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |

**TABLE OF CONTENTS**


I. JURISDICTION AND VENUE ..... 5
II. APPLICABILITY ..... 6
III. DEFINITIONS ..... 6
IV. CIVIL PENALTY ..... 8
V. STIPULATED PENALTIES ..... 10
VI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ..... 11
VII. COSTS ..... 14
VIII. NOTICES ..... 14
IX. EFFECTIVE DATE ..... 16
X. RETENTION OF JURISDICTION ..... 17
XI. MODIFICATION ..... 17
XII. TERMINATION ..... 17
XIII. PUBLIC PARTICIPATION ..... 18
XIV. SIGNATORIES/SERVICE ..... 18
XV. INTEGRATION ..... 19
XVI. FINAL JUDGMENT ..... 19

**WHEREAS**, Plaintiffs, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Nevada ("State"), on behalf of the Nevada Division of Environmental Protection ("NDEP") (jointly, "Plaintiffs"), concurrently with the lodging of this Consent Decree, have filed a Complaint in this action alleging that Defendant, Newmont USA Limited ("Newmont"), has violated the State's authorized hazardous waste program under Subtitle C of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq., which is set forth at Title 40 ("Public Health and Safety"), Chapter 459 ("Hazardous Materials") of the Nevada Revised Statutes ("N.R.S.") Sections 459.400 - 459.600 and the applicable regulations in the Nevada Administrative Code ("NAC") at Chapter 444 ("Sanitation"), NAC 444.850 - 444.8746, and which incorporates by reference certain regulations in 40 C.F.R. Parts 260 - 270, at its Gold Quarry gold mine facility located 6 miles north of Carlin, Nevada ("Facility");

**WHEREAS**, the Complaint includes allegations, disputed by Newmont, that Newmont: (1) failed to characterize and illegally treated and disposed, without a RCRA permit or interim status, a Secondary Stream generated from the mercury scrubber that is part of air pollution controls in the Refractory Ore Treatment Plant ("ROTP") of the Facility; (2) failed to meet land disposal restrictions; (3) illegally treated Fire Assay Materials from its assay laboratories without a RCRA permit or interim status; (4) failed to close a container of alleged hazardous waste in the Facility's laboratory when waste was not being added to or removed from the container; and (5) failed to maintain a complete contingency plan, in violation of N.R.S. Sections 459.400 - 459.600, and the applicable regulations in NAC 444.850 - NAC 444.8746;

**WHEREAS**, Newmont contends that Subtitle C of RCRA and the regulations promulgated thereunder do not apply to certain practices at the Facility due to RCRA exemptions

and maintains that it has been and remains in compliance with the RCRA program as interpreted and implemented by the State. Newmont's position is that the mercury scrubber Secondary Stream is not a solid waste and that all Secondary Streams from air pollution controls associated with the ROTP at the Facility (including the Secondary Stream from the mercury scrubber) are exempt from RCRA hazardous waste regulation pursuant to the Bevill Amendment, 40 C.F.R. § 261.4(b)(7), which has been incorporated into the State's authorized RCRA hazardous waste program pursuant to NAC 444.8632;

**WHEREAS**, in the past, the State interpreted the RCRA Bevill Amendment to exempt all secondary streams from air pollution controls associated with roasting and other beneficiation activities at gold production facilities (including the mercury scrubber Secondary Stream) and believed its interpretation was consistent with EPA guidance, and Newmont relied on the State's interpretation and operated the Facility in good faith on that basis and in accordance with its State Water Pollution Control Act permit;

**WHEREAS**, in 2007 EPA performed a RCRA Compliance Evaluation Inspection at the Facility and subsequently alleged as part of this enforcement action that certain Secondary Streams from air pollution controls associated with roasting activities at the Facility were solid waste and were not exempt under the RCRA Bevill Amendment;

**WHEREAS**, beginning in the summer of 2012, the State and EPA met and analyzed in detail the application of RCRA to the Secondary Streams from the air pollution controls at the Facility and to secondary streams from air pollution controls at beneficiation units at other gold production facilities in Nevada and came to agreement and understanding about the interpretation and applicability of the RCRA Bevill Amendment to various processes at gold producing facilities in the State of Nevada;

**WHEREAS**, concurrent with the lodging of this Consent Decree, Jeff Scott, Director of the Land Division of EPA Region IX, has sent a letter to Colleen Cripps, Administrator of NDEP, addressing the scope of the RCRA Bevill Amendment as applied to secondary streams from air pollution controls associated with beneficiation activities at gold producing facilities in the State of Nevada ("Scott/Cripps Letter"), and the State has issued a Guidance Document consistent with the Scott/Cripps Letter;

**WHEREAS**, the State and EPA agree that the Boliden-Norzink unit is the point at which mineral processing (or chemical production) begins to occur in connection with cleaning exhaust gases at the ROTP at the Facility, and that air pollution control Secondary Streams generated from that point forward as part of gas handling in the ROTP, including air pollution control Secondary Streams generated from the Sulfuric Acid Plant in the ROTP, are not exempt from RCRA hazardous waste regulation pursuant to the Bevill Amendment;

**WHEREAS**, based on this understanding, any air pollution control Secondary Streams generated from the ROTP prior to the Boliden-Norzink unit are excluded from RCRA hazardous waste regulation pursuant to the Bevill Amendment;

**WHEREAS**, based on the Scott/Cripps Letter and detailed information concerning the current operations at the Facility derived from the inspection of the Facility, discussions between and data known by the State and EPA, and the flow diagrams listed in Appendix A, the Parties agree that air pollution control Secondary Streams associated with ore drying/pre-heating, electrowinning, carbon regeneration, autoclaving, and pregnant/barren solution tanks within the Facility are exempt from RCRA hazardous waste regulation pursuant to the Bevill Amendment;

**WHEREAS,** EPA and the State agree that the Scott/Cripps letter properly and correctly defines the scope of the Bevill Amendment as applied to the Facility;

**WHEREAS,** as part of its continuing cooperation with EPA and at EPA's specific request, Newmont modified the flow process in the Facility's ROTP to divert the Secondary Stream from the mercury scrubber by pipe directly to the carbon-in-leach circuit of the Facility for recovery and reuse of its water values, with mercury being collected in downstream production operations and sent offsite, thereby discontinuing the conveyance of this Secondary Stream to the Facility's Mill 5/6 Tailings Storage Facility ("TSF");

**WHEREAS**, EPA and NDEP agree that, based on Newmont's modification of the flow process in the Facility's ROTP to divert the Secondary Stream from the mercury scrubber by pipe to the carbon-in-leach circuit and cease conveyance to the TSF, Newmont is currently operating in compliance with RCRA with respect to management of that Secondary Stream;

**WHEREAS**, the Complaint includes allegations, disputed by Newmont, that Newmont's conveyance of Fire Assay Materials from its laboratories to the Facility's flotation circuit for use of the lead contained in the Fire Assay Materials constitutes illegal treatment in violation of RCRA;

**WHEREAS**, Newmont ceased conveying Fire Assay Materials to its flotation circuit at the Facility, and is now sending the Fire Assay Materials off-site to RCRA permitted treatment, storage and disposal facilities;

**WHEREAS,** Newmont has conducted itself in good faith in its discussions with the Plaintiffs concerning the violations alleged in the Complaint, and has implemented the operational changes at its Facility as referenced above, obviating the need for injunctive relief pertaining to the alleged violations;

**WHEREAS**, by agreeing to entry of this Consent Decree, Newmont makes no admission of law or fact with respect to the allegations in the Complaint, and continues to deny any non-

compliance or violation of any law or regulation identified therein or in this Consent Decree. For the purpose of avoiding litigation among the Parties, however, Newmont agrees to the requirements of this Consent Decree; and

**WHEREAS**, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (Jurisdiction and Venue), below, and with the consent of the Parties,

**IT IS HEREBY ADJUDGED, ORDERED, AND DECREED** as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), and 28 U.S.C. §§ 1331, 1345, and 1355. This Court also has personal jurisdiction over Newmont for purposes of the Complaint filed in this action and to enter and enforce this Consent Decree. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391(b) and Section 3008(a) of RCRA, 42 U.S.C. § 6928(a), because the violations alleged in the Complaint occurred, and the Facility is located, in Elko and Eureka Counties, Nevada. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Newmont consents to the Court's jurisdiction over this Consent Decree and any such action and over Newmont, and further consents to venue in this judicial district.

2. Pursuant to Section 3008(a)(2) of RCRA, 42 U.S.C. § 6928(a)(2), notice of the commencement of this action has been given to NDEP.

3. For purposes of this Consent Decree only, Newmont agrees that the Complaint states claims upon which relief may be granted.

## II. APPLICABILITY

4. The obligations of this Consent Decree apply to and are binding upon the United States, the State, and Newmont and any successors or assigns.

5. No transfer of ownership or operation of the Facility shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.

6. Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree.

7. In any action to enforce this Consent Decree, Newmont shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

8. Every term expressly defined by this Section shall have the meaning given that term herein. Every other term used in this Consent Decree that is also a term used under RCRA, as amended, 42 U.S.C. § 6901 et seq., its implementing regulations, N.R.S. Sections 459.400 - 459.600, and/or NAC 444.850 - 444.8746, shall have the same meaning in this Consent Decree as such term has under RCRA, the N.R.S., or under federal or state regulations. For purposes of this Consent Decree, whenever terms defined below are used in this Consent Decree, such definitions shall apply:

(a) "Boliden-Norzink Unit" shall mean the patented air pollution control process currently used in Tower 3 of the ROTP at the Facility to remove mercury from roaster gases;

(b) “Complaint” shall mean the complaint filed by the United States and the State in this action;

(c) “Consent Decree” or “Decree” shall mean this Consent Decree including the Whereas clauses;

(d) “Court” shall mean the United States District Court for the District of Nevada;

(e) “Day” shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State of Nevada holiday, the period shall run until the close of business of the next business day;

(f) “Defendant” or “Newmont” shall mean Newmont USA Limited;

(g) “EPA” shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

(h) “Effective Date” shall have the definition provided in Section IX (Effective Date);

(i) “Facility” shall mean the Newmont Gold Quarry mine located approximately 6 miles north of Carlin, Nevada;

(j) “Fire Assay Materials” shall mean cupels, crucibles, slag, baghouse dust, and other lead-bearing materials or wastes generated from the fire assay process at the Facility’s laboratories or the laboratories of other Newmont facilities located in Nevada and managed at the Facility’s flotation circuit;

(k) “NDEP” shall mean Nevada Division of Environmental Protection;

(l) “Paragraph” shall mean a portion of this Consent Decree identified by an Arabic numeral;

(m) “Parties” shall mean the United States, the State, and Newmont;

(n) "Secondary Stream" or "Secondary Material" shall mean all effluents, residuals, or other streams generated by air pollution control equipment associated with the ROTP or other beneficiation units or operations at the Facility.

(o) "Section" shall mean a portion of this Consent Decree identified by a Roman numeral;

(p) "State" shall mean the State of Nevada;

(q) "Sulfuric Acid Plant" shall mean the portion of the ROTP at the Facility that converts sulfur dioxide gas from the Boliden-Norzink Unit into a commercial grade concentrated sulfuric acid product;

(r) "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

9. Within thirty (30) Days after the Effective Date of this Consent Decree, Newmont shall pay the sum of $395,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging, in accordance with Paragraphs 10 and 11.

10. Within thirty (30) Days after the Effective Date of this Consent Decree, of the total amount specified in Paragraph 9, Newmont shall pay $197,500, together with interest accruing from the date on which the Consent Decree is lodged with the Court, to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice, in accordance with written instructions to be provided by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Nevada to Newmont following lodging of the Consent Decree. At the time of payment, Newmont shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, to the United States in accordance

with Section VIII (Notices) of this Consent Decree; by email to acctsreceivable.CINWD@epa.gov; and by mail to:

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, OH 45268

The transmittal letter shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in United States et al. v. Newmont USA Limited and shall reference the civil action number and DOJ case number 90-7-1-10580.

11. Within thirty (30) Days after the Effective Date of this Consent Decree, of the total amount specified in Paragraph 9, Newmont shall pay the sum of $197,500 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, to the State by EFT in accordance with instructions that will be provided by the State within ten (10) Days of the lodging of this Consent Decree. At the time of payment, Newmont shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, to the State in accordance with Section VIII (Notices) of this Consent Decree. The transmittal letter shall state that the payment is for a civil penalty owed pursuant to the Consent Decree in United States et al. v. Newmont USA Limited.

12. Newmont shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section V (Stipulated Penalties) in calculating its federal or state or local income tax.

## V. STIPULATED PENALTIES

13. Newmont shall be liable for stipulated penalties to the United States and the State for violations of this Consent Decree as follows: if Newmont fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) of this Consent Decree when due, Newmont

shall pay a stipulated penalty of up to $1,000 per Day for each Day that the payment is late, together with interest. Late payment of the civil penalty shall be made in accordance with Section IV (Civil Penalty). Stipulated penalties for late payment of the civil penalty shall be paid in accordance with Paragraphs 14 and 16, below. All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree, or for stipulated penalties for late payment, as applicable, and shall include the identifying information set forth in Paragraphs 10 and 11, above.

14. Newmont shall pay stipulated penalties due to the United States and to the State within thirty (30) Days of a written demand by either Plaintiff. Newmont shall pay fifty percent (50%) of the total stipulated penalty amount due to the United States and fifty percent (50%) to the State. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff.

15. Either Plaintiff may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to it under this Consent Decree. The determination by one Plaintiff not to seek stipulated penalties, or to subsequently waive or reduce the amount it seeks, shall not preclude the other Plaintiff from seeking the portion of the stipulated penalties owed to it.

16. Newmont shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 10, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Newmont shall pay stipulated penalties owing to the State in accordance with Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

17. Newmont shall not deduct stipulated penalties paid under this Section in calculating its state and federal income tax.

18. If Newmont fails to pay stipulated penalties according to the terms of this Consent Decree, Newmont shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Newmont's failure to pay any stipulated penalties.

## VI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

19. This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action through the date of the lodging of the Consent Decree. With respect to the violations alleged in the Complaint, Newmont shall not be required to obtain a RCRA Section 3005 treatment, storage or disposal permit under the State or federal RCRA hazardous waste programs for its Mill 5/6 tailings storage facility ("TSF"), the ROTP, or the flotation circuit, or be required to comply with the RCRA Subtitle C standards in 40 C.F.R. Parts 264 and 265 or their State counterparts with respect to these units, based upon any Secondary Stream or Fire Assay Materials generated, treated, stored, managed, or disposed of in the ROTP, flotation circuit or TSF on or before the date of this Consent Decree.

20. The United States and the State reserve all legal and equitable remedies available to enforce this Consent Decree, and Newmont reserves all legal and equitable defenses available to it in the defense of any such enforcement. This Consent Decree shall not be construed to limit the rights of the United States or the State to obtain penalties or for the United States or the State to obtain injunctive relief under the federal and state environmental statutes or their implementing regulations, or under other federal or state law, regulations, or permit conditions,

except where contrary to or inconsistent with this Consent Decree. The United States and the State further reserve all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

21. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties or other appropriate relief relating to the Facility or Defendant's violations, Newmont shall not assert, and may not maintain, any defense or claim based upon the contention that the claims raised by the Plaintiffs in the subsequent proceeding were or should have been brought in the instant case under principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other doctrines, except with respect to claims and matters that have been resolved pursuant to this Consent Decree. Newmont reserves all other legal and equitable defenses to any such proceedings or claims brought by the United States or the State, including that any such proceedings or claims are contrary to or inconsistent with this Consent Decree.

22. This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Newmont is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; Newmont's compliance with this Consent Decree shall be no defense to any action commenced by Plaintiffs pursuant to any such laws, regulations, or permits, except as provided in this Consent Decree.

23. Except as provided in this Consent Decree, the United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that

Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of RCRA, 42 U.S.C. § 6901 et seq., or with any other provisions of federal, state, or local laws, regulations, or permits.

24. This Consent Decree does not limit or affect the rights of the Parties against any third parties (persons not a Party to this Consent Decree), nor does it limit the rights of third parties except as otherwise provided by law.

25. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party.

26. Within ten (10) days of a final court order approving this Consent Decree that is not subject to further appeal, or as to which the time to appeal has expired and no appeal has been taken, Newmont shall dismiss with prejudice Newmont USA Limited, et al. v. Environmental Protection Agency, D.C. Cir. 12-1146. During the pendency of any proceedings before the Court regarding entry of the Consent Decree, and during the pendency of any appeal relating to the Consent Decree, the Parties shall continue to urge the D.C. Circuit to hold Case No. 12-1146 in abeyance.

## VII. COSTS

27. The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Newmont.

## VIII. NOTICES

28. Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

To the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Re: DOJ Case # 90-7-1-10580

and to EPA:

John Schofield
U.S. Environmental Protection Agency, Region 9, ENF-2-2
75 Hawthorne Street
San Francisco, CA 94105
(415) 972-3386

Van Housman
Office of Civil Enforcement
Mail Code 2249A
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
Phone: (202) 564-1849

To the State of Nevada:

Colleen Cripps, Administrator
Nevada Division of Environmental Protection
901 S. Stewart Street
Carson City, NV 89701

Cassandra P. Joseph
Senior Deputy Attorney General
Nevada Attorney General's Office
100 N. Carson Street
Carson City, NV 89701

To Newmont:

Nancy Lipson
Vice President, Deputy General Counsel
Newmont Mining Corporation
6363 South Fiddler's Green Circle
Greenwood Village, Colorado 80111
(303) 863-7414
nancy.lipson@newmont.com

Gavin Jangard
Regional Legal Counsel, Vice President
Newmont USA Limited
1655 Mountain City Highway
Elko, NV 89801
gavin.jangard@newmont.com

Michael Giannotto
Goodwin Procter LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
(202) 346-4124
mgiannotto @goodwinprocter.com

29. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

30. Notices submitted in accordance with this Section shall be deemed submitted on the date they are postmarked or, if sent electronically, they shall be deemed submitted upon transmission, but a notice is not effective if the sending Party learns that it did not reach the Party to be notified. Notwithstanding the sender's receipt of a successful delivery notification, a recipient that fails to receive the submission may request delivery by other means. Such a request does not affect the timeliness of the original submission.

## IX. EFFECTIVE DATE

31. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## X. RETENTION OF JURISDICTION

32. The Court shall retain jurisdiction over this Consent Decree for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Section XI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XI. MODIFICATION

33. The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

## XII. TERMINATION

34. After Newmont has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Newmont may serve upon the United States and the State a Request for Termination, stating that Newmont has satisfied those requirements, together with all necessary supporting documentation.

35. Following receipt by the United States and the State of Newmont's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Newmont has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States, after consultation with

the State, agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

36. The agreements and understandings by the United States and the State as set forth at Paragraph 19 shall survive any termination of this Consent Decree. In addition, the agreements and understandings by the United States and the State as to the scope of the Bevill Amendment embodied in the Scott/Cripps letter as applied to the Facility shall survive the termination of this Consent Decree.

## XIII. PUBLIC PARTICIPATION

37. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Newmont consents to entry of this Consent Decree in its current form without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court in its current form or to challenge any provision of the Consent Decree, unless the United States has notified Newmont in writing that it no longer supports entry of the Consent Decree. If for any reason the Court should decline to agree to this Consent Decree in the form presented, or if approval is subsequently vacated on appeal, the terms of this Consent Decree may not be used as evidence in any litigation among the Parties.

## XIV. SIGNATORIES/SERVICE

38. Each undersigned representative of Newmont, the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, or his designee, and the State's representative certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

39. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Newmont, the United States and the State agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XV. INTEGRATION

40. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XVI. FINAL JUDGMENT

41. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and

Newmont. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Dated and entered this __ day of ___________, 2015.

______________________________
UNITED STATES DISTRICT JUDGE
DISTRICT OF NEVADA

WE HEREBY CONSENT to the entry of the Consent Decree in United States et al. v. Newmont USA Limited, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

Date: 2/20/15

Henry S. Friedman
Assistant Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O Box 7611
Ben Franklin Station
Washington, D.C. 20004

DANIEL G. BOGDEN
United States Attorney
District of Nevada

Date: 2/11/15

Holly Vance
Assistant United States Attorney
100 West Liberty Street, Suite 600
Reno, Nevada 89501

WE HEREBY CONSENT to the entry of the Consent Decree in United States et al. v. Newmont USA Limited, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

Date: 2/12/15

Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency

WE HEREBY CONSENT to the entry of the Consent Decree in United States et al. v. Newmont USA Limited, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE UNITED STATES OF AMERICA:

Date: 02/06/15

Jared Blumenfeld
Regional Administrator, Region 9
United States Environmental Protection Agency

Date: 1/27/15

Sylvia Quast
Regional Counsel, Region 9
United States Environmental Protection Agency

WE HEREBY CONSENT to the entry of the Consent Decree in United States et al. v. Newmont USA Limited, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR THE STATE OF NEVADA:

Date: 1/23/15

Colleen Cripps
Administrator of the Nevada Division of
Environmental Protection

Date: 1/22/15

Cassandra P. Joseph
Senior Deputy Attorney General

WE HEREBY CONSENT to the entry of the Consent Decree in United States et al. v. Newmont USA Limited, subject to the public notice requirements of 28 C.F.R. § 50.7.

FOR DEFENDANT NEWMONT USA LIMITED:

Date: 1/26/15

Stephen P. Gottesfield
Vice President Newmont USA Limited

Appendix A
Newmont Gold Quarry

1. Figure, Gold Quarry Gold Recovery: Electrowinning, Bates # N001
2. Figure, Gold Quarry: Carbon Stripping-Pregnant Solution Tanks, Bates # N002
3. Simplified Overview of Wet Cleaning Effluent Streams at Gold Quarry Roaster, Bates # N003
4. Gold Quarry – R.O.T.P. Dry Grinding, Bates # N004
5. Gold Quarry – R.O.T.P. Ore Preheating, Bates # N005
6. Gold Quarry – Refractory Ore Treatment Plant, Mill 6 Process Flow Sheet, Bates # N006
7. Refractory Ore Treatment Plant, Environmental Roasting and Gas Cleaning Flow Diagram, Bates # N007
8. Newmont Mining Corporation, Mill 6 Mercury Bleed Stream Project, Final Design Report, June 16, 2010, Halon Engineering Architecture, Inc., Bates # N008-N052